IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MATTHEW NOWOGURSKI,    )
                      )
    Plaintiff,        )
                      )    No. 17 C 6476
v.                    )
                      )    Magistrate Judge Sidney I. Schenkier
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security, )
                      )
    Defendant.        )

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, Matthew Nowogurski, moves for reversal and remand of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") (doc. # 12). The Commissioner has filed a cross-motion for summary judgment, asking this Court to affirm the Commissioner's decision (doc. # 19). Plaintiff has filed his reply (doc. # 21), and so now the matter is fully briefed. For the following reasons, we grant plaintiff's motion and remand the case.

### I.

Mr. Nowogurski applied for DIB on December 12, 2014, alleging an onset date of March 15, 2009 (R. 194). His date last insured ("DLI") was December 31, 2014 (R. 206). After his claim was denied initially and on reconsideration (R. 121, 127), Mr. Nowogurski, along with a medical expert ("ME") and vocational expert ("VE"), testified at a hearing before an Administrative Law Judge ("ALJ") (R. 47). On August 30, 2016, the ALJ issued her decision, denying Mr. Nowogurski's claim for benefits (R. 31-40). The Appeals Council denied Mr. Nowogurski's

---

[1]On November 6, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 10).

request for review of the ALJ's decision on July 6, 2017, making the ALJ's ruling the final decision of the Commissioner (R. 1-3). *See Shauger v. Astrue*, 675 F.3d 690, 695 (7th Cir. 2012).

## II.

Mr. Nowogurski was born on June 3, 1966 (R. 194). He worked as an auto mechanic for most of his adult life, until his alleged onset date of March 15, 2009, when Mr. Nowogurski claims he stopped working due to the following medical conditions: torn meniscus, left knee problems, lateral tears, heart disease, sleep apnea, and gout (R. 52, 209, 219). He stated in his Disability Report that he has not worked since then (R. 209).

### A.

Mr. Nowogurski was under the care of several doctors between March 2009 and his DLI of December 2014. From 2009 to February 2010, he was treated with injections of Kenalog (a corticosteroid) at Illinois Bone & Joint Institute for left elbow pain and swelling, which his physician attributed to osteoarthritis (most common form of arthritis), cellulitis (a bacterial skin infection), and possible gout (a form of arthritis characterized by pain and swelling in the joints); x-rays of the elbow were unremarkable (R. 292-302).

In January 2009, Mr. Nowogurski began receiving treatment from a podiatrist, Louis Sorto, D.P.M., for recurrent, acute pain and inflammation in his feet (R. 527-29). Dr. Sorto administered a steroid injection in Mr. Nowogurski's right foot (*Id.*). During the first half of 2010, Dr. Sorto administered at least three additional injections to Mr. Nowogurski's left foot and another one in his right foot (R. 511-26).

On July 22, 2010, Mr. Nowogurski reported injuring his right foot after falling in a sink hole (R. 521). Dr. Sorto administered a steroid injection to his right foot (*Id.*), and following further complaints of right foot pain, Dr. Sorto took x-rays, which showed a bone spur (R. 518). On

2

October 4, 2010, Mr. Nowogurski had surgery performed on his bone spur, and during follow-up appointments stated he was feeling better (R. 514-16).

On August 4, 2011, Mr. Nowogurski returned to Dr. Sorto, complaining chiefly of recurrent pain and mild localized inflammation in his left foot, and Dr. Sorto administered an anti-inflammatory injection (R. 510). The following month, Mr. Nowogurski sought treatment from Dr. Blazej Lojewski, a general practitioner. The record shows that Mr. Nowogurski received regular treatment from Dr. Lojewski from 2011 through 2014, but beyond evidence that Dr. Lojewski referred Mr. Nowogurski to various specialists for treatment of hand, chest, and back pain, Dr. Lojewski's notes are illegible (R. 307-16).

On January 3, 2013, Mr. Nowogurski returned to Dr. Sorto, complaining of acute pain and mild inflammation in his left foot (R. 509). Dr. Sorto prescribed Voltaren (NSAID), and Vicodin (narcotic) (*Id.*). The following week, Mr. Nowogurski received a CT scan of his left elbow, upon referral by Dr. Lojewski; it revealed a large bone spur and soft tissue swelling (R. 339).

Mr. Nowogurski returned to Dr. Sorto on August 8, 2013, complaining of acute pain and swelling in his right foot (R. 507). Dr. Sorto diagnosed Mr. Nowogurski with acute gout and injected Mr. Nowogurski's right foot with steroids; Dr. Sorto recommended ice and Advil PM along with open toe sandals until the symptoms subsided (*Id.*). In October 2013, Dr. Sorto administered another steroid injection in Mr. Nowogurski's right foot (R. 506). He diagnosed Mr. Nowogurski with bursitis (a painful condition from inflamed bursae – small, fluid-filled sacs cushioning bones, tendons and muscles near joints) (*Id.*).

In 2014, Mr. Nowogurski had imaging done of his right foot, left knee, and lower back upon referral from Dr. Lojewski, in response to Mr. Nowogurski's continued complaints of pain and inflammation (R. 333-34, 336-38). An MRI of his left knee revealed a partial-tear of the ACL,

a Grade 2 sprain/partial-tear of the MCL, and a lateral meniscus tear (R. 336-37). An MRI of Mr. Nowogurski's lumbar spine revealed central herniation at L4-5 with underlying bulge narrowing the foramina, L5-S1 disc bulge narrowing the left foramen, and minor bulging of the L3-4 disc narrowing the foramina (R. 333-34). The x-ray of his right foot was "unremarkable" (R. 338).

On April 17, 2014, Dr. Lojewski requested a six-month, temporary handicap placard for Mr. Nowogurski, on the basis that that Mr. Nowogurski "is severely limited in the ability to walk" (R. 345). On November 26, 2014, Dr. Lojewski completed a physical impairment questionnaire which indicated the following work restrictions: lifting restrictions of five to 10 pounds, sitting two hours and standing/walking three hours in an eight-hour day, occasional use of the upper extremities, use of a brace and cane, and three or more absences a month. (R. 368).

On December 29, 2014, Mr. Nowogurski began seeing general practitioner, Dr. Ejaz Ahmed Khan, M.D. (R. 380). During the initial appointment, Dr. Khan noted the reason for the visit was to obtain refills of his asthma, cholesterol, and blood pressure medication (*Id.*). Dr. Khan performed a physical exam and did not note anything abnormal (R. 380-82). About two weeks later, Mr. Nowogurski returned to Dr. Khan, complaining of "right hand pain for a long time and getting worse over few weeks" (R. 376). Dr. Khan noted that Mr. Nowogurski "works as a mechanic and uses his hands a lot" (*Id.*). Dr. Khan noted that Mr. Nowogurski's right hand had joint tenderness and mild swelling and referred him to Brian McCall, M.D. (R. 377).

On January 23, 2015, Mr. Nowogurski was examined by Dr. McCall, an orthopedic surgeon (R. 403). Upon examination, Dr. McCall noted that Mr. Nowogurski had some pain with manipulation and mild tenderness in his right hand (*Id.*). Dr. McCall diagnosed Mr. Nowogurski with carpal tunnel syndrome of his right wrist and arthritis and referred him to a hand specialist to determine whether the pain was mechanical coming from the joint (R. 403-04). Mr. Nowogurski

began seeing Todd Rimington, M.D., the hand specialist, in July 2015 (R. 479). Dr. Rimington filled out a physical impairment questionnaire on September 10, 2015, checking boxes indicating Mr. Nowogurski could not sit more than one hour, stand/walk more than two hours or lift more than five pounds in a day, and he was likely to miss three or more days of work per month (R. 432). Dr. Rimington opined that these limitations occurred prior to January 2015 (*Id.*).

On March 4, 2015, the non-examining state agency consultant opined that Mr. Nogorski was limited to light work (lifting 20 pounds occasionally and 10 pounds frequently, and standing/walking or sitting for a total of six hours in an eight hour workday) with some postural limitations and limited handling with his right hand (R. 98-100). On reconsideration, on May 28, 2015, another non-examining state agency consultant affirmed the first opinion (R. 112-14).

Later in 2015, Mr. Nowogurski returned to Dr. Sorto and complained of pain and swelling in the right foot after he mis-stepped when coming down a ladder (R. 504). Dr. Sorto diagnosed Mr. Nowogurski with acute gout and administered a steroid injection to his right foot (*Id.*). On February 11, 2016, Dr. Sorto completed the same physical impairment questionnaire as Dr. Rimington, but only answered three of the questions, indicating that Mr. Nowogurski could stand/walk two to three hours per day, that he would likely to miss three or more days of work per month, and that these impairments occurred prior to January 2015 (R. 531).

**B.**

At his hearing on April 22, 2016, Mr. Nowogurski testified that he stopped working in March 2009 because his "body was pretty much giving up;" he had pain in his back radiating into his knee, worse on his left side, pain and swelling in his elbow and hand, and he has arthritis, bursitis, tendonitis and gout and chronic inflammation in his left foot, making it difficult to stand (R. 52-55, 64). Mr. Nowogurski testified that his pain would come and go at a level of seven or

5

eight out of 10 and he had pain every day (R. 59, 67). He stated that he cannot take gout medication or anti-inflammatories, but he has had multiple cortisone shots in his feet (R. 55).

Mr. Nowogurski testified that he had to shift between short periods of sitting and standing and he could not do either for more than two to four hours in one day due to his back pain, and he could not lift more than a gallon of milk (R. 61-65). He was able to perform light cleaning around the home, but nothing that involved bending, and he could not walk for more than 10 to 15 minutes at a time (R. 62, 64). The ALJ asked Mr. Nowogurski about medical records that referred to him as still working as a mechanic, but he testified he has not worked since 2009 (R. 65-66).

Dr. Sai Nimmagadda, the ME, testified next (R. 70). Based on the record evidence and Mr. Nowogurski's testimony, Dr. Nimmagadda opined that from 2009 to 2014, Mr. Nowogurski had the following severe impairments: knee pain and meniscus tear, lumbar degenerative disc disease, sleep apnea, carpal tunnel syndrome (based on his subjective pain and numbness), arthritis, gout, and coronary arterial disease, none of which met a listing (R. 71-73). Dr. Nimmagadda opined that Mr. Nowogurski was limited to lifting 20 pounds occasionally and 10 pounds frequently, standing or walking for up to two hours in an eight-hour day, sitting for about six hours in an eight-hour day, occasional pushing, pulling and fingering with the right upper extremity, and some additional postural limitations (R. 72). Dr. Nimmagadda stated that he did not agree with the physical impairment questionnaires filled out by Mr. Nowogurski's treating physicians because he found those were not substantiated with objective or subjective findings in the record (R. 75).

In response to the ALJ's hypothetical question of an individual who was limited to sedentary work with only occasional fingering on the right hand, the VE testified that Mr. Nowogurski could not perform his previous work as a mechanic, but that other work existed for him to perform in the national economy (R. 82-83).

## C.

In her written opinion, the ALJ determined that Mr. Nowogurski was not under a disability from his alleged onset date of March 15, 2009 through the date last insured, December 31, 2014 (R. 31). At Step One, the ALJ found that Mr. Nowogurski had not engaged in substantial gainful activity from March 15, 2009, through December 31, 2014 (R. 33). At Step Two, the ALJ found that during this time frame, Mr. Nowogurski had the following severe impairments: torn meniscus and Grade 2 sprain of the left knee; sleep apnea; gout (intermittent); degenerative arthritis of the lumbar spine and disc bulge; right hand carpal tunnel syndrome and osteoarthritis of the right thumb; and asthma (*Id.*). At Step Three, the ALJ found that none of these impairments—alone or in combination—met or equaled a listed impairment (R. 34).

Next, the ALJ determined that Mr. Nowogurski had the residual functional capacity ("RFC") to perform sedentary work except he could occasionally push, pull and finger with the right upper extremity (R. 34). The ALJ stated that this RFC was supported by the medical evidence of record, medical source opinions, and Mr. Nowogurski's activities of daily living, and found that "[t]he alleged severity of his pain and limitations is inconsistent with his actual treatment, which involved no ongoing pain relieving modalities," "no . . . significant treatment for back and knee pain," and "some sporadic injections for intermittent left elbow pain and gout attacks" (R. 38).

In support of this determination, the ALJ reasoned that: (1) Mr. Nowogurski's assertion that he did not work after March 2009 was inconsistent with medical records from 2015 and 2016 noting that "he was working as a mechanic and uses his hands a lot" (R. 35-36); (2) x-rays of his left elbow were unremarkable and he had infrequent injections (R. 36); (3) despite abnormal findings in his knee, Mr. Nowogurski did not have surgery because he is on blood thinners and he does not take pain medications to relieve the pain (*Id.*).; (4) on December 29, 2014, he had a normal

physical examination with normal range of motion and no tenderness (*Id.*); and (5) in January 2015, despite complaints of worsening hand pain and a positive carpal tunnel compression test, Mr. Nowogurski had no significant restriction of motion and there was no clear electrodiagnostic evidence of carpal tunnel syndrome (R. 36-37).

The ALJ next reviewed the opinions of medical professionals in the record. The ALJ gave "great weight" to the ME testimony of Dr. Nimmagadda, because "he is familiar with the Social Security regulations, and he had the opportunity to review the entire record, including the hearing testimony, and his opinion is consistent with the record" (R. 37). She gave "partial weight" to the state agency opinions because she found the "evidence as a whole demonstrates greater limitations" than their limitations to light exertion (*Id.*). The ALJ gave "little weight" to the physical impairment questionnaire filled out by Dr. Rimington "because, although he indicated the limitations dated back to 2013, Dr. Remington [sic] did not start treating the claimant until July 2015, which is after the DLI, and such extreme limitations are inconsistent with the objective findings during the time period at issue" (R. 38). The ALJ also gave "little weight" to the physical impairment questionnaire filled out by Dr. Sorto because the ALJ found "such extreme limitations are not consistent with intermittent gout attacks, which he indicated are relieved with steroid injections and anti-inflammatory medications" and "[t]hey are further inconsistent with Dr. Sorto's own treatment records, which indicate the only limitations he provided was the type of shoes to wear" (*Id.*). In addition, the ALJ noted that "there are no records of podiatry treatment in 2014 and only a couple in late 2015 for gout," and a January 2014 foot x-ray was unremarkable (*Id.*).

The ALJ gave "little weight" to the handicap placard form Dr. Lojewski filled out for Mr. Nowogurski because it was "temporary and there is no indication that he continues to have a placard" (R. 37). The ALJ also reviewed the physical impairment questionnaire Dr. Lojewski filled

out (*Id.*). The ALJ stated that "[a] sedentary RFC is consistent with the testimony of the medical expert[; h]owever, work absences of more than 3 days a month is unsupported by the record, considering gout attacks were intermittent, complaints of pain were sporadic, and diagnostic and clinical findings were mild" (*Id.*).

At Step Four, the ALJ determined that Mr. Nowogurski was unable to perform past relevant work as an auto mechanic (R. 39). At Step Five, however, the ALJ found that were "jobs that existed in significant numbers in the national economy that the claimant could have performed" (*Id.*). Therefore, the ALJ found Mr. Nowogurski "not disabled" (R. 40).

### III.

Courts review ALJ decisions deferentially to determine if they are supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (internal citations and quotations omitted). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).

Plaintiff argues that the ALJ's opinion should be reversed and remanded because substantial evidence does not support the ALJ's RFC assessment, the ALJ improperly rejected plaintiff's treating physicians' opinions, and the ALJ failed to adequately assess his impairments under the Listings (doc. #12: Pl.'s Mot. at 8-13).[2] We agree that the ALJ's RFC assessment and

---

[2]Mr. Nowogurski also argues that he falls into the category of a person closely approaching advanced age (50–55), and he should be deemed disabled based on the ALJ's sedentary finding (Pl.'s Mot. at 13). This argument is

treatment of Dr. Lojewski's and Dr. Sorto's opinions was inadequate. Because we find remand is necessary on this basis, we do not reach plaintiff's additional arguments for remand.

A.

We address first the ALJ's treatment of Dr. Lojewski, who treated Mr. Nowogurski from at least September 2011 through 2014. The ALJ gave "little weight" to the form Dr. Lojewski filled out in April 2014 for Mr. Nowogurski to obtain a temporary handicap placard which indicated Mr. Nowogurski was severely limited in the ability to walk, because "it was temporary, and there is no indication that he continues to have a placard" (R. 37). The ALJ noted that in November 2014, Dr. Lojewski filled out a physical impairment questionnaire that limited Mr. Nowogurski to lifting five to ten pounds, sitting two hours in an eight-hour workday, standing or walking three hours in an eight-hour work day, occasional use of the upper extremities, use or a brace and cane, and three or more absences a month (*Id.*). The ALJ then stated that "[a] sedentary RFC is consistent with the testimony of the medical expert[; h]owever, work absences of more than 3 days a month is unsupported by the record, considering gout attacks were intermittent, complaints of pain were sporadic, and diagnostic and clinical findings were mild" (*Id.*). The ALJ did not discuss any of the treatment records from Dr. Lojewski, which were illegible to the Court. The ALJ's analysis of Dr. Lojewski contained several errors that require remand.

*First*, the ALJ's analysis of Dr. Lojewski's opinions misconstrues the evidence. "Where a judge rejects a treating physician's opinion because it does not align with the judge's own incorrect

---

a non-starter. Mr. Nowogurski was 42 years old on his alleged onset date of March 15, 2009, and he was 48 years old on his date last insured of December 31, 2014. Although Mr. Nowogurski is now 53, the ALJ determined that he was limited to sedentary work between his alleged onset date and his date last insured, *i.e.*, between the ages of 42 and 48. Thus, plaintiff was properly considered a "younger person (under age 50)" for purposes of the ALJ's opinion. *See* 20 C.F.R. 404.1563(c); *see also Britt v. Berryhill*, 889 F.3d 422, 425 (7th Cir. 2018) (affirming ALJ's determination that claimant was not entitled to DIB because he was limited to sedentary work until his date last insured, September 30, 2012, and he did not turn 50 until March 7, 2013).

interpretation of the medical evidence, that decision is not supported by substantial evidence." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (internal citations and quotations omitted). Here, contrary to the ALJ's finding, Dr. Lojewski did not assess Mr. Nowogurski with the ability to perform sedentary work. To the contrary, in the physical impairment questionnaire, Dr. Lojewski opined that Mr. Nowogurski could not perform a full eight-hour day's work, as he could only sit up to two hours and stand or walk up to three hours. In addition, the ALJ's determination that there was no indication that Mr. Nowogurski's severe limitations continued beyond the six-month period covered by the temporary handicap placard (April through October 2014) -- is undermined by the questionnaire Dr. Lojewski filled out seven months later (November 2014), opining Mr. Nowogurski still had limitations inconsistent with full-time work. As such, the ALJ's decision to reject Dr. Lojewski's opinion and assess a sedentary RFC was not supported by substantial evidence.

*Second*, the ALJ erred by failing "to determine what weight [Dr. Lojewski's] opinion was due under the applicable regulations." *Kaminski*, 894 F.3d at 875. "A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and is consistent with other evidence in the record." *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). The ALJ must evaluate the following factors if she does not give a treating source's medical opinion controlling weight: the examining relationship between the claimant and the physician, their treatment relationship (including the length of their relationship, the frequency of examination, and the nature and extent of their relationship), the supportability and consistency of the physician's opinion, and the physician's specialization. 20 C.F.R. § 404.1527(c)(1-5).[3]

---

[3]This rule applies to claims filed before March 27, 2017. *See* 20 C.F.R. §§ 404.1520c(a).

11

Here, the ALJ's analysis ignored the length of Dr. Lojewski's treating relationship with Mr. Nowogurski and the frequency of Dr. Lojewski's examinations. Dr. Lojewski's handwritten treatment notes were illegible to the Court, and the ALJ's failure to discuss any of these notes "suggests that the ALJ, too, was confounded by their contents." *Powers v. Berryhill*, No. 16 C 8136, 2018 WL 6590560, at *12 (N.D. Ill. Dec. 13, 2018). However, the ALJ was not permitted to simply ignore Dr. Lojewski's three years of "contemporaneous handwritten notes documenting [plaintiff's] condition throughout the insured period." *Id.* The number of Dr. Lojewski's notes shows that Mr. Nowogurski regularly sought treatment with him, and imaging reports in the record show Dr. Lojewski ordered multiple tests based on Mr. Nowogurski's complaints continued of hand, elbow, chest, and back pain. "Given the significance of Dr. [Lojewski's] treatment, the court concludes the ALJ was required to do more," for example, contacting Dr. Lojewski "to obtain more legible copies or an explanation of the progress notes in the record." *Costa v. Berryhill*, No. 17 C 5068, 2018 WL 6621324, at *9 (N.D. Ill. Dec. 18, 2018) (citing *Koppers v. Colvin*, No. 15 C 5471, 2016 WL 3136916, at *4 (N.D. Ill. June 6, 2016)).

In addition, the ALJ overlooked the extent to which Dr. Lojewski's opinion in the physical impairment questionnaire was supported by other evidence in the record. "An ALJ's failure to consider findings that support a treating physician's opinion is error." *Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018). Dr. Lojewski's opinion that Mr. Nowogurski's functional capacity was reduced to the extent that he could not work was consistent with the physical impairment questionnaires filled out by both Dr. Sorto and Dr. Rimington. In addition, the ALJ did not address the multiple referrals Dr. Lojewski made based on Mr. Nowogurski's repeated complaints of pain. The fact that the non-examining medical expert, Dr. Nimmagadda, disagreed with Dr. Lojewski's

opinions "does not, by itself, suffice as a justification for discounting the opinion of the treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016).

**B.**

We also find the ALJ's treatment of Dr. Sorto to be deficient. The ALJ gave "little weight" to the physical impairment questionnaire filled out by Dr. Sorto, which indicated that prior to January 2015, Mr. Nowogurski could only stand or walk two to three hours per day and would have likely missed three or more days of work per month (R. 38). The ALJ found "such extreme limitations are not consistent with intermittent gout attacks, which he indicated are relieved with steroid injections and anti-inflammatory medications," and "[t]hey are further inconsistent with Dr. Sorto's own treatment records, which indicate the only limitations he provided was the type of shoes to wear" (*Id.*). The ALJ also noted that "there are no records of podiatry treatment in 2014 and only a couple in late 2015 for gout," and a January 2014 foot x-ray was unremarkable (*Id.*). The ALJ's analysis of Dr. Sorto ignores several years of treatment between Mr. Nowogurski's alleged onset date and his date last insured.

It is well-settled that "an ALJ may not ignore evidence that undercuts her conclusion." *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018). The ALJ noted briefly that "Dr. Sorto's medical records do note that the claimant received injections for gout attacks" and stated that Dr. Sorto's records "indicate the only limitations he provided was the type of shoes to wear" (R. 38). However, Dr. Sorto's records show that he treated Mr. Nowogurski more extensively than that. Dr. Sorto treated him since January 2009 and gave him multiple injections for pain in his right foot throughout 2010 until he had surgery on a bone spur in October 2010 (R. 514-29). In 2011, Mr. Nowogurski returned to Dr. Sorto complaining of pain in his left foot, for which Dr. Sorto administered an injection in August 2011 and prescribed Voltaren and Vicodin in January 2013

(R. 500-10). Later in 2013, Mr. Nowogurski complained of acute pain again in his right foot and received injections for pain in August and October of that year. While Mr. Nowogurski did not seek constant treatment from Dr. Sorto during the relevant time frame, the ALJ erred by not considering the full extent and nature of the treatment provided by Dr. Sorto, Mr. Nowogurski's treating podiatrist.

### C.

Finally, remand is necessary because the ALJ's assessment of a sedentary RFC relies on a misinterpretation of evidence in the record, such that the decision to assign a sedentary RFC is not supported by substantial evidence. *See Kaminski*, 894 F.3d at 874. As explained above, the ALJ erroneously found that Dr. Lojewski's RFC opinion was consistent with a sedentary RFC for Mr. Nowogurski. Instead, each treating physician in the record opined that Mr. Nowogurski had limitations that were inconsistent with full-time work, and the ALJ gave little weight to these opinions. In addition, Mr. Nowogurski testified that he could not perform any work, even sedentary, and the ALJ found this testimony inconsistent with the evidence.

On the other hand, the medical expert and the state agency physicians opined that Mr. Nowogurski could perform light work. The ALJ gave "great weight" to the ME testimony of Dr. Nimmagadda (R. 37). However, unlike the ALJ, Dr. Nimmagadda opined that Mr. Nowogurski could perform light work: lifting 20 pounds occasionally and 10 pounds frequently, standing or walking for up to two hours in an eight-hour day, sitting for about six hours in an eight-hour day, occasional pushing, pulling and fingering with the right upper extremity and unlimited with the left upper extremity (R. 72).[4] In addition, the ALJ gave "partial weight" to the state agency

---

[4] Sedentary work "involves lifting no more than 10 pounds at a time" and "a sedentary job is defined as one which involves sitting . . .," while light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and includes a job "when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(a-b).

opinions that assessed Mr. Nowogurski with the ability to perform light work because the ALJ found the "evidence as a whole demonstrates greater limitations" (R. 37).

This leaves unclear why the ALJ determined that Mr. Nowogurski should be limited to sedentary work. The ALJ cites no medical opinion evidence to support her conclusion that plaintiff was more limited than Dr. Nimmagadda opined, but far less limited than each of plaintiff's treaters opined. We conclude that the ALJ failed to build a logical bridge between substantial evidence and her conclusion that Mr. Nowogurski was capable of a limited range of sedentary work.[5]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (doc. # 12) is granted, and the Commissioner's motion for affirmation of the ALJ's decision (doc. # 19) is denied. We remand the case for further proceedings consistent with this opinion. The case is terminated.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATED: March 5, 2019

---

[5] We reach this conclusion despite several troubling misstatements plaintiff's attorney made in briefing this matter, including that the medical expert found plaintiff's impairments met several Listings and that the ALJ did not discuss whether plaintiff could return to work as an auto mechanic or perform other jobs (Pl.'s Mot. at 6, 10)